The Honorable Bobby Tullis State Representative Box 277 Mineral Springs, AR 71851
Dear Representative Tullis:
This is in response to your request for an opinion on four questions regarding the assessment of property taxes. Your questions will be restated and answered in the order posed.
An initial general discussion of the property tax assessment process will be helpful in addressing your specific questions. The county assessor is given authority to assess real property in his county between the first Monday in January and July 1 of each year. See A.C.A. § 26-26-1101 (1987). The assessor is given authority to assess personal property of the county between the first Monday in January and July 31 of each year. See Act 860 of 1991, amending A.C.A. § 26-26-1408(a)(6) (Supp. 1989). The assessor is required to file a report of the assessment of all real and personal property located in his county with the county clerk on or before the third Monday in August. See A.C.A. §26-26-716(a) (Supp. 1989). At that point, the county equalization board undertakes the equalization of the assessed value of the property of the county. See A.C.A. § 26-27-309 (Supp. 1989). After the county equalization board completes its equalization, the State Equalization Board undertakes to equalize assessments of all real and personal property statewide. See A.C.A. §26-27-202 (1987). By the third Monday in November, all equalization should be completed, see A.C.A. § 26-27-204 (1987), and the county clerk proceeds to extend the taxes on the tax books based on the adjusted or equalized property values. See
A.C.A. § 26-27-320(b) (1987); A.C.A. § 26-28-103 (1987). The clerk turns the tax books over to the county tax collector on or before the third Monday in February for collection. See A.C.A. § 26-28-108(a) (1987). Taxes are collected from that time until October 10th of that year; thus, taxes are actually collected the year after they are assessed. See A.C.A. § 26-35-501 (Supp. 1989). After the completion of the collection of taxes for the year, the tax books are apparently returned to the county clerk.See A.C.A. § 26-28-113 (1987).
With regard to your first two questions, you note that the county assessor is required to file a report of the assessments of all property within the county with the county clerk on or before the third Monday in August. Your first question is:
 (1) What is the deadline for a county assessor to stop making changes to the current year tax books (i.e. '91 to be collected in '92)?
We begin by noting that every tax must be assessed in a manner authorized by law before it becomes a legal charge or lien against the property. Vandergrift v. Lowery, 195 Ark. 257,111 S.W.2d 510 (1937). The county assessor is only authorized to assess real property until July 1st of each tax year and personal property until July 31st. It is my opinion that once the county assessor's authority to assess property ends, either on July 1st or July 31st, the assessor is precluded from making changes to the tax books for that year, with exceptions noted below. This conclusion is supported by the fact that the assessor must deliver a copy of his completed assessment tax record to the clerk of the county equalization board by August 1st, and by the fact that on or before the third Monday in August, the assessor must file his report of the assessment of all real and personal property of the county with the county clerk, both of which indicate the conclusion of the assessor's part of the property tax assessment process.
After the county assessor has turned the tax assessment books over to the county clerk, it appears that the only changes that may be made to those books include adjustments ordered by the county court or the county or state equalization board, the addition of erroneously omitted assessments, and the correction of actual and obvious errors on the tax books and related records. See A.C.A. §§ 26-27-204, 26-27-320, 26-26-913,26-26-1002, and 26-28-111 (1987). Even in those situations, while the assessor may bring the problem to the attention of the county clerk, the clerk makes the actual changes on the books, not the assessor. Id. It should be noted that no changes may be made to the tax books for a particular year after the county collector closes the tax books for that year the following October. SeeJensen v. Dierks Lumber Coal Co., 209 Ark. 262, 190 S.W.2d 5
(1945).
Your second question is:
 (2) May a county assessor make changes to the valuation that are not "actual and obvious errors" that affect the original charge to the county collector for tax books after the county tax books are opened?
As noted in response to your first question, changes may be made to the tax books upon the discovery of errors. See A.C.A. §26-28-111 (1987). Section 26-28-111 provides a method of correcting errors discovered in the real or personal property tax books after the books have been delivered to the county tax collector. Section 26-28-111(c) specifically provides that:
 (c) The provisions of this section shall be applicable only to the correction of actual and obvious errors on the tax books and related records, with such errors being restricted to extension errors, erroneous property descriptions, classifications, or listings, and shall not be utilized to make any change in the valuation of any real or personal property as shown on the tax books and related records other than a change in valuation necessitated by the correction of actual and obvious errors as provided in this section. In no case shall any reduction in the valuation of any real or personal property be made, except such as shall have been ordered by the county board of equalization, the county court, the circuit court, or the Supreme Court, or be caused by the correction of actual and obvious errors as provided in this section.
[Emphasis added.]
The language of this section specifically prohibits changing the valuation of property unless that change is necessitated by the correction of actual and obvious errors or is ordered by the county board of equalization or a court. Thus, it is my opinion that a change in valuation not necessitated by the correction of an actual and obvious error may not be made unless it is ordered by the equalization board or a court.
Your third question is:
 (3) Under Arkansas Code Annotated § 26-26-721, should only delinquent lands not certified to the State Land Office still show values on the current year tax books?
County assessors are required to account for every parcel of real property in the county on the assessment roll, and county clerks must likewise account for every parcel of real property in the county in extending the taxes on the tax books. See A.C.A. §26-26-718 (1987). As noted in your request, A.C.A. § 26-26-721
(1987) requires the county assessor to stamp or write in the county tax books beside the valuation of land of the county that has been certified to the State Land Office for the nonpayment of delinquent taxes, the words "State of Arkansas" and the year the lands were certified to the State Land Office. We note that A.C.A. § 26-28-107 (1987) imposes a similar duty upon the county clerk. It is my opinion that these provisions require the valuation of even those lands that have been certified to the State Land Office to appear on the tax books.
Your fourth question is:
 (4) Is the county clerk obligated to sign and certify the final abstract of the equalization board and the assessment abstract for the Assessment Coordination Division and the Department of Education if applicable tax delinquent lands have not been removed from the assessments?
With respect to this question, you note that A.C.A. § 26-27-321
(1987) requires the county clerk to prepare and file with the State Equalization Board, on or before the second Monday in November, a final abstract of the tax books showing, by total of items and value, the total assessment of his county after all adjustments ordered by the county equalization board and the county court. The county clerk is required to certify the same information, which is commonly referred to as the abstract of the county equalization board, to the Assessment Coordination Division, on or before December 1 of each year. See A.C.A. §26-26-304(c)(4)(A) (Supp. 1989). Additionally, it appears that either the county clerk or the county board of education must certify to the Department of Education the total valuation of the real, personal, and utility and carrier property for the county. This becomes the "assessed valuation" utilized in education funding. See, e.g., A.C.A. § 6-20-302(4) (1987); A.C.A. § 6-20-310(a) (1987); A.C.A. § 6-20-314(b) (1987); and A.C.A. §6-20-401(1) (1987).
Assuming these are the documents you are referring to in your question, we must now consider whether the county clerk must sign and/or certify these documents if applicable tax delinquent lands have not been removed from the abstracts. The assessment abstracts in question contain only total assessed values of the real and personal property in the county, upon which property taxes will be based. Thus, the abstracts should not reflect the valuation of land that has been certified to the State Land Office for nonpayment of delinquent taxes, because the state is not required to pay taxes on this property. The abstracts should, however, reflect the value of tax delinquent lands that have not yet been certified to the State Land Office, because taxes are collectible on those lands until they are so certified.[1]
Thus, it is my opinion that the inclusion of tax delinquent lands in the final abstract of the county equalization board and in the assessment abstract prepared for the Department of Education would not excuse the county clerk from signing and/or certifying those documents to the Assessment Coordination Division and the Department of Education, respectively, unless those lands have been certified to the State Land Office.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
Winston Bryant Attorney General
[1] It is important to note that after lands have been tax delinquent for two years, they must be certified to the Commissioner of State Lands for collection or sale. See A.C.A. § 26-37-101 (Supp. 1989).